COMMONWEALTH of Pennsylvania,
Appellee,

v.

Jeffrey FULLIN, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 6, 2005.
Filed Feb. 1, 2006.

John J. Waldron, Allentown, for appellant.

James B. Martin, Asst. Dist. Atty., Allentown, for Com., appellee.

BEFORE: STEVENS, LALLY-GREEN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lehigh County following Appellant's conviction on the charges of endangering the welfare of children, 18 Pa. C.S.A. § 4304(b), and reckless driving, 75 Pa.C.S.A. § 3736(a). Appellant contends (1) the trial court erred in imposing an aggravated range sentence without considering the nature and circumstances of the offense, and the history and characteristics of Appellant, (2) the trial court failed to state sufficient reasons on the record to support an aggravated range sentence, (3) the trial court erred in ordering Appellant to serve his sentence in a state correctional institution, and (4) the trial court erred in including as a condition of Appellant's parole and probation supervision that he be prohibited from operating any motor vehicle for the entire five year period of his supervision. We affirm.

¶ 2 The trial court set forth the procedural history and facts as follows:

On January 10, 2005, the Petitioner pled guilty before this Court to one count each of Endangering the Welfare of Children and Reckless Driving, stemming from a motor vehicle accident on March 27, 2004, which left the Petitioner's son, [G.F.], a paraplegic.

On February 14, 2005, after consideration of a Pre-sentence Investigation Report and testimony presented on behalf of the Commonwealth and the Petitioner, the Petitioner was sentenced to pay the costs of prosecution, make restitution to Cheryl Fullin in the amount of $231.25, undergo imprisonment for a period of not less than one nor more than three years in a State Correctional Institution, two years of consecutive probation (to be supervised by Lehigh County Probation and Parole), and 200 hours of community work service. Furthermore, the Petitioner was sentenced to pay a fine of $200.00 (for the charge of Reckless Driving) and is prohibited from driving a motor vehicle during the period of his parole and probation supervision.

A standard range sentence for Endangering the Welfare of Children was Restorative Sanctions to 9 months and the aggravated sentence was 12 months.

On February 16, 2005, the Petitioner filed a Motion for Reconsideration and Modification of Sentence.... Such Mo-

tion was Denied by this Court on February 17, 2005.

On March 7, 2005, the Petitioner filed a Notice Of Appeal to the Superior Court of Pennsylvania. On March 16, 2005, the Petitioner was ordered to file a Statement of Matters Complained Of within fourteen days. On March 29, 2005, the Petitioner filed the Statement, outlining the same objections he had already suggested in his Motion for Reconsideration and Modification of Sentence.

On March 27, 2004 at approximately 4 p.m., the Petitioner was driving a red 2002 Pontiac Firehawk [sic] Trans–Am sports car northbound on MacArthur Road (in the area of Route 329), Lehigh County, Pennsylvania, when he came to a traffic light. Witnesses to the accident related to the Pre-sentence Investigator that while at the light, the Petitioner "revved his engine" and when the light turned green, sped off, traveling a perceived rate of 120 mph. After the traffic light changed to green, the Petitioner accelerated at an excessive rate of speed. Based on evidence of the accident reconstruction and the testimony of witnesses interviewed for the PSI, it was determined that the Petition [sic] was traveling at an approximate speed of 112 miles per hour in a 55 miles per hour zone. His vehicle "fish-tailed" and the Petitioner lost control of the vehicle, which began to cross over the left lane and west berm of the road. The vehicle struck a guardrail with its left side, traveled 45 feet north, and then went through the guardrail. The vehicle fell thirty to thirty-five feet, flipping over numerous times, before coming to rest on the driver's side door. A subsequent examination of the Firehawk [sic] revealed that the car's suspension, steering, exhaust and breaks [sic] were in good condition and did not contribute to the crash. At the time of the accident, the Petitioner was traveling with his son, [G.F.], then eleven years old.

When the Trans–Am finally came to its resting place, the victim, [G.F.], was upside down, partially ejected from the car. An off-duty Whitehall police officer responding to the accident debris he witness [sic], assisted in removing the screaming child from his seatbelt (which had been wrapped around his upper chest). The Petitioner was pinned by the car and was unconscious. Both [G.F.] and the Petitioner were flown by helicopter to Lehigh Valley Hospital.

As a result of the accident, [G.F.], now twelve years old, is a paraplegic. He sustained massive spinal damage, three fractures to his skull, a collapsed lung, pelvic injury and broken bones in his chest and arms. At the time of his injuries, he was not expected to live. Interviewed after the accident, [G.F.] recalled that he saw the speedometer of the Trans–Am register at 95 miles per hour and heard the Petitioner utter an expletive immediately before the crash.

During his interview for the Pre-sentence Investigation Report, the Petitioner admitted to recalling only "bits and pieces" of the accident and that he "was responsible" and knew that he made a "bad decision." *See Pre. Sent. Rpt.* P. 3. In addition, he stated that out of habit, he would typically travel 70 miles per hour on that stretch of MacArthur Road. In addition, the Petitioner related that as part of his chronic pain management, he ingested two Vicodin tablets during the day of the accident, but did not feel as though his consumption played a significant role in the accident.

[G.F.], now 12 years old, remains wheelchair-bound. After the accident, [G.F.] received treatment at Lehigh Valley Hospital and the Children's Hospital

of Philadelphia, and continues with therapy at the Spinal Cord Injury Program at Good Shepard Rehabilitation Hospital. Although typically an honor roll student, [G.F.]'s grades have declined recently. [G.F.] resides with his mother (the Petitioner's estranged wife), Cheryl Fullin. At the time of sentencing, both Cheryl Fullin and [G.F.] spoke regarding their thoughts about the accident and the Petitioner. Cheryl Fullin informed the Court about [G.F.]'s struggles following the accident and his prognosis for the future. [G.F.] read a letter to his father, the Petitioner, explaining his emotional and physical pain.

Following the accident, the Petitioner made an "impulse buy" of a 2001 Z06 Corvette, worth approximately $35,000.[1] At the time of sentencing, the Petitioner (through his counsel) stated that he has chronic pain and that he undergoes psychotherapy. He stated that he was very affected by the accident, even attempting suicide. He also expressed a desire to engage in family counseling so that he could help take care of his son and "give back" to his family and the community. In addition to the Petition [sic], several other members of the community spoke about the Petitioner's involvement in church groups and devotion as a father. Trial Court Opinion, 5/31/05, at 1–5.

¶ 3 Appellant first contends that the trial court did not properly consider the nature and circumstances of the offense, and the history and characteristics of Appellant.[2] Specifically, Appellant argues the trial court failed to consider the sentencing factors set forth in 42 Pa.C.S.A. § 9721(b), improperly based Appellant's sentence on a factor that constituted an essential element of the crime for which Appellant was convicted, and "failed to consider the honest remorse and efforts at rehabilitation already displayed by [Appellant]" in imposing a sentence in the aggravated range.

¶ 4 Regarding Appellant's first argument in his first question presented, that the trial court failed to consider the factors set forth in 42 Pa.C.S.A. § 9721(b), we conclude Appellant has raised a substantial question. *Commonwealth v. Stewart*, 867 A.2d 589, 592 (Pa.Super.2005). However, we conclude Appellant's claim is meritless.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*) (quotations and citations omitted).

¶ 5 "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant...." *Commonwealth v. Walls*,

1. [G.F.], in his letter to his father, expressed anger and hurt regarding this purchase.

2. We note that all of Appellant's claims on appeal challenge the discretionary aspects of his sentence. We conclude that Appellant has properly preserved his challenges in his post-sentence motion, properly raised the claims in his court-ordered Pa.R.A.P. 1925(b) statement, and set forth a proper statement in his brief pursuant to Pa.R.A.P. 2119(f).

846 A.2d 152, 157 (Pa.Super.2004), *appeal granted,* 583 Pa. 662, 875 A:2d 1075 (2005). "[A]nd, of course, the court must consider the sentencing guidelines." *Id.* at 158.

¶ 6 Here, in sentencing Appellant in the aggravated range, the trial court made reference to its consideration of the protection of the public: "[Y]ou [Appellant] continue to drive in this reckless fashion and put yourself and others and, particularly, your children, at risk of what ultimately happened," N.T. 2/14/05 at 69; "And I do feel that there is this need for speed that, quite frankly, that I can't comprehend. It's got to stop." *Id.* at 71. The trial court also made reference to its consideration of the rehabilitative needs of Appellant: "In fashioning this sentence, I've taken into account...the comments of supporters for Mr. Fullin. And, Mr. Fullin, I'm glad you have those supporters.... They appear to be very fine people, and I hope they will continue to support you." *Id.* at 72. Finally, the court made reference to its consideration of both the gravity of the offense in relation to the impact on the victim and the community; and the sentencing guidelines: "This sentence is in the aggravated range of the guidelines because of the extreme indifference for the consequences of [Appellant's] actions and because of the extreme nature of the harm to the victim." *Id.* at 75.

¶ 7 Based on the aforementioned, we conclude the trial court gave proper consideration to the factors listed in 42 Pa. C.S.A. § 9721(b) when it imposed Appellant's sentence.

■ ¶ 8 Appellant's next specific argument in support of his first question presented is that the trial court improperly based his aggravated range sentence on a factor that constituted an element of the offense of endangering the welfare of children. We conclude this argument raises a substantial question, *Commonwealth v. Twitty,* 876 A.2d 433 (Pa.Super.2005); however, we find the argument to be meritless.

¶ 9 When deciding whether a court has improperly based an aggravated sentence on a factor that is already an element of the crime, we have stated:

[T]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a norm for comparison, *i.e.,* the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases....

The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather, upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.

*Walls,* 846 A.2d at 158. An aggravated range sentence for Appellant will thus be justified to the extent that the individual circumstances of his case are atypical of the crime for which Appellant was convicted, such that a more severe punishment is appropriate.

¶ 10 The crime of Endangering the Welfare of Children is defined as follows: "A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a). Appellant claims that the trial court based his aggravated range sentence on the fact that Appellant violated a duty of care to his son, and thus based it on an essential element of his crime. To support his argument, Appellant cites to the following statement made by the trial court: "It's a difficult case for sentencing, but, quite frankly, I don't equivocate because it is clear to me that you seriously, seriously abrogated a duty of care and were not mindful of what should have been the most precious treasure." N.T. 2/14/05 at 72–73.

¶ 11 However, rather than supporting Appellant's argument, the trial court's statement undermines it. The trial court's use of the words "seriously, seriously abrogated" indicate that it was imposing a sentence based on the fact that Appellant had not merely violated a duty of care, but that Appellant's behavior was a particularly egregious violation of that duty. The same sentiment was reiterated by the trial court when it sentenced Appellant: "This sentence is in the aggravated range of the guidelines because of the **extreme** indifference for the consequences of the defendant's actions and because of the **extreme** nature of the harm to the victim." N.T. 2/14/2005 at 75 (emphasis added). The aggravated range sentence was thus based on the trial court's finding that not only did Appellant commit a crime, but he committed it in an atypically objectionable way and it had an atypically harmful result.

¶ 12 Moreover, the record supports the trial court's characterization of this case's circumstances as "extreme." Appellant was traveling approximately 112 miles per hour in a 55 miles-per-hour zone with his eleven-year-old son in the car, which caused an accident that left his son with "massive spinal damage, three fractures to his skull, a collapsed lung, pelvic injury, and broken bones in his chest and arms." Trial Court Opinion 5/31/05 at 4. As a result of the accident, Appellant's son is a paraplegic. *Id.* Conversely, Appellant offers no argument that the circumstances of this case are in any way typical of cases falling within the broad definition of Endangering the Welfare of Children, in terms of either the egregiousness of Appellant's behavior or the seriousness of harm to the victim. We conclude that Appellant's argument lacks merit.

¶ 13 Appellant's third argument in support of his first question presented is that the trial court "failed to consider the honest remorse and efforts at rehabilitation already displayed" by Appellant in imposing a sentence in the aggravated range. We conclude Appellant has raised a substantial question; however, we find the issue to be meritless. *See Commonwealth v. Hyland,* 875 A.2d 1175, 1183 (Pa.Super.2005) (indicating substantial question raised when issue raises question of whether trial court sentenced in aggravated range without considering mitigating circumstances).

¶ 14 In sentencing Appellant, the trial court indicated that it was considering "the presentence investigation report, the guidelines, the driving record attached to the guidelines, the testimony of Mrs. Fullin and of the victim, [G.F.], and the comments of supporters for Mr. Fullin," as well as those things said by Appellant and the comments of counsel. N.T. 2/14/05 at 72. "Where the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's charac-

ter and weighed those considerations along with the mitigating statutory factors." *Commonwealth v. L.N.*, 787 A.2d 1064 (Pa.Super.2001).

¶ 15 Appellant offers no support from the record that the trial court did not consider relevant mitigating facts, except that "[t]he sentencing judge gave no indication of accepting or appreciating the remorse and the defendant's efforts at rehabilitation." The trial court, however, was only obligated to consider mitigating circumstances, not to accept or appreciate them. Indeed, the trial court found Appellant's purchase of a $35,000.00 sports car after the accident that injured his son to be "insensitive," and that despite the accident Appellant had a continuing "need for speed." N.T. 2/14/05 at 71. These statements indicate that the trial court was somewhat skeptical of Appellant's remorse and efforts at rehabilitation upon considering these factors. We conclude that the trial court gave adequate consideration to mitigating circumstances when sentencing Appellant.

¶ 16 Therefore, with respect to Appellant's first question presented, we conclude that the trial court properly considered the nature and circumstances of the offense and history and characteristics of Appellant when it imposed a sentence in the aggravated range of the sentencing guidelines. Appellant, therefore, is not entitled to relief on any of these grounds.

■ ¶ 17 Appellant's second question presented is that the trial court failed to state on the record sufficient reasons for imposing an aggravated range sentence. We conclude Appellant has raised a substantial question, *Twitty, supra*; however, we conclude the issue is meritless.

¶ 18 At sentencing, the trial court made this statement: "This sentence is in the aggravated range of the guidelines because of the extreme indifference for the consequences of the defendant's actions and because of the extreme nature of the harm to the victim." N.T. 2/15/05 at ·75. Again, Appellant makes no argument that the circumstances of this case are not in fact "extreme" for a case of Endangering the Welfare of Children. He merely offers the fact that there were other circumstances to mitigate the extreme circumstances of the crime. As indicated *supra*, we believe the trial court gave due consideration to those factors. Therefore, we conclude that the trial court gave sufficient justification for imposing an aggravated range sentence, and, therefore, Appellant's second argument fails.

■ ¶ 19 Appellant's third question presented is that the trial court abused its discretion by ordering Appellant to serve his sentence in a state correctional institution rather than in a county facility. Appellant cites 204 Pa.Code § 303.11(b)(2) for the proposition that Appellant's crime falls within Level 2 of the sentencing guidelines, and that the sentencing options available for Level 2 include confinement in a county facility, but not a state facility. We conclude Appellant has raised a substantial question, *Commonwealth v. Stalnaker*, 376 Pa.Super. 181, 545 A.2d 886 (1988); however, we find the issue to be meritless.

¶ 20 The trial court's power to choose whether to commit Appellant to a state or prison facility is derived from 42 Pa.C.S.A. § 9762, which provides the following:

**All persons** sentenced to a total or partial confinement for:

(1) maximum terms of five or more years shall be committed to the Bureau of Corrections for confinement;

(2) maximum terms of two years or more but less than five years may be committed to the Bureau of Corrections for confinement or may be committed to

a county prison within the jurisdiction of the court;

(3) maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court except that as facilities become available on dates and in areas designated by the Governor in proclamations declaring the availability of State correctional facilities, such persons may be committed to the Bureau of Corrections for confinement.

42 Pa.C.S.A. § 9762 (emphasis added).

¶ 21 In the case *sub judice*, the trial court imposed upon Appellant a maximum term of three years in prison. Pursuant to the clear, plain language of subsection 9762(2), the trial court had the discretion to commit Appellant to either the Bureau of Corrections, which is the agency responsible for administering the state correctional system and its facilities, or a county prison. *See Commonwealth v. Stalnaker*, 376 Pa.Super. 181, 545 A.2d 886, 888 (1988). An *en banc* panel of this Court has specifically held that "the plain meaning of Section 9762 is that length of maximum sentence determines where a prisoner is committed." *Commonwealth v. Mefford*, 863 A.2d 1206, 1209 (Pa.Super.2004) (*en banc*). "There is no single prescribed commitment for persons...whose maximum sentences subject them...to subsection (2), for a court of common pleas in those cases has the choice of either committing the person to the Bureau of Corrections or committing him instead to the county prison." *Id.*

¶ 22 In suggesting that confinement in a state facility is not a sentencing option in this case, Appellant has incorrectly interpreted 204 Pa.Code § 303.11(b)(2), which indicates that the sentencing options available to a person who commits a "Level 2 offense," [3] includes total confinement in a county facility under a county sentence, partial confinement in a county facility, restrictive intermediate punishments, or restorative sanctions. However, 204 Pa. Code § 303.11(b)(2) provides for such sentencing options only when the "Level 2" offender is sentenced in the standard range, which is defined as having an upper limit of less than 12 months in prison and a lower limit of restorative sanctions. In fact, 204 Pa.Code § 303.11(b) plainly indicates that "[t]he sentencing level is based on the standard range of the sentencing recommendations."

¶ 23 In the case *sub judice*, Appellant was properly sentenced in the aggravated range to a term of one year to three years in prison. The standard range sentencing options provided for in 204 Pa.Code § 303.11(b)(2), which do not conflict with the criteria set forth in 42 Pa.C.S.A. § 9762, are not applicable to Appellant.[4] *See Commonwealth v. Hanson*, 856 A.2d 1254 (Pa.Super.2004) (holding that court control over the offender and a county sentence are not of concern for a "Level 2 offense" when an aggravated sentence is imposed).

¶ 24 Having determined that confinement in a state facility was a sen-

3. Endangering the Welfare of Children is a "Level 2 offense." 204 Pa.Code § 303.15.

4. The Pennsylvania Commission on Sentencing Comments indicates that "[w]hen the court determines that there are aggravating or mitigating circumstances, it may impose an aggravated or mitigated sentence in accordance with § 303.13. Imposition of an aggravated or mitigated sentence does not alter the sentencing level, since the level is based on the OGS and PRS." This Comment was made to Section 303.9(a) and not to Section 303.13. Furthermore, Appellant has developed no argument regarding this Comment and, in fact, he has not even cited to it. Therefore, we decline to address the Comment further. *See* Pa.R.A.P. 2119.

tencing option in this case, we further conclude that the sentencing court did not abuse its discretion in choosing such confinement.

[L]ittle if any guidance exists to aid the trial court in exercising its discretion with respect to determining the place for confinement under 42 Pa.C.S.A. § 9762(2). While a convicted individual has no constitutional or other inherent right to serve his imprisonment in any particular institution or type of institution, a court should consider the differences between the state and county prison environment in choosing to sentence an individual to a state rather than a county facility. In *Commonwealth v. Ward,* 340 Pa.Super. 1, 489 A.2d 809, 812 (1985), we recognized:

The policy behind requiring that a person sentenced to simple imprisonment serve the sentence in a county jail and not a state penitentiary recognizes that such a person, who is rarely in trouble, should not be subjected to imprisonment with persons guilty of serious misdemeanors or felonies.

*Stalnaker,* 545 A.2d at 889 (citation omitted).

¶ 25 In the case *sub judice,* the trial court's decision to commit Appellant to a state correctional institution rather than a county facility did not constitute an abuse of discretion. The sentencing proceedings reveals that the trial court thoroughly considered and balanced the factors enumerated in the Sentencing Code, as well as considered a pre-sentence report, in determining that a state correctional facility was the appropriate place for Appellant to serve his sentence. *See* N.T. 2/14/05 at 4.

¶ 26 In addition, the trial court considered the testimony from Appellant's wife, who is the young victim's mother, regarding the effect Appellant's actions had on the family when Appellant crashed his ve-

hicle while traveling 112 mph, thereby rendering his son a paraplegic. The trial court heard Appellant's wife testify regarding the horror of observing the victim in the hospital immediately after the accident and told the court that, following the accident, Appellant, referring to the victim, stated he was "starting to hate that F'n kid." N.T. 2/14/05 at 8. Appellant's wife testified about the difficulties in taking care of the victim and indicated that Appellant does not assist her in any manner. N.T. 2/14/05 at 10. She also informed the trial court that Appellant will not take responsibility for the accident and, in fact, bought himself a high performance sports car shortly thereafter. N.T. 2/14/05 at 10–11.

¶ 27 The trial court also considered the victim's testimony that he was angry because he is wheelchair bound, that Appellant hit and kicked the victim at times prior to the accident, that Appellant was "speeding almost every time [the victim] was in the...car," and that the victim remembered previously seeing Appellant drive as much as 145 mph on the same stretch of road where the accident occurred. N.T. 2/14/05 at 19–20.

¶ 28 The trial court considered Appellant's testimony that he is sorry for the accident, he hopes to return to church with his son, he suffers from chronic pain due to a previous vehicle accident, and he believes he is not a threat to society. N.T. 2/14/05 at 30–32. The trial court further heard testimony from witnesses that Appellant now attends church, he is remorseful, he is a gentle man, and he is a responsible man. N.T. 2/14/05 at 34–46.

¶ 29 In response to all of the testimony and pre-sentence report, the trial court stated on the record that it believed Appellant is not remorseful, it noted Appellant's habit of excessive speeding and "need for speed," and it indicated Appellant abro-

gated a clear duty of care towards his son. N.T. 2/14/05 at 27, 51–55. In sum, in sentencing Appellant to a state correctional institution, the sentencing court properly balanced the seriousness of the offense committed by Appellant, the impact the crimes have had on the victim, Appellant's lack of remorse, and Appellant's rehabilitative needs. *See Stalnaker, supra.*

¶ 30 Therefore, we conclude the trial court did not abuse its discretion in confining Appellant to a state correctional institution, and we find no merit to his third question presented.

 ¶ 31 Appellant's final question presented is that the trial court abused its discretion when it included as a condition of Appellant's parole and probation supervision that he be prohibited from operating any motor vehicle for the entire five-year period of his supervision. He argues that the condition is unduly restrictive of his liberty and not reasonably related to his rehabilitation, and therefore improper. Because Appellant is alleging that his sentence is inconsistent with 42 Pa.C.S.A. § 9754(c), a specific provision of the Sentencing Code, Appellant raises a substantial question. *Commonwealth v. Hermanson,* 449 Pa.Super. 443, 674 A.2d 281, 283 (1996).

¶ 32 In imposing an order of probation, a court may require a defendant "[t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." 42 Pa.C.S.A. § 9754(c)(13). In *Herman-*

*son,* we held that this provision, known as the "catch-all" provision of § 9754, could be used by a sentencing court to prohibit a person convicted of driving under the influence from operating a motor vehicle prior to the expiration of the maximum sentence of his conviction as a condition of his future parole. *Hermanson,* 674 A.2d at 284. In that case, we reasoned "that this condition of parole will aid in importance of the absence of alcohol or other controlled substances in one's body when driving an automobile on our highways." *Id.*

¶ 33 Appellant contends that the instant case is distinguishable from *Hermanson,* as the offender in that case was driving under the influence of alcohol and was a repeat offender. We disagree. Prohibiting a drunk driver from driving for a period of time is rationally related to the rehabilitative goal of "impressing upon him the importance of the absence of alcohol or other controlled substances in one's body when driving an automobile on our highways." *Id.* at 284. Similarly, prohibiting a person who drives at excessive speeds from driving for a period of time is rationally related to the rehabilitative goal of impressing upon him the importance of responsible driving, particularly when driving his children.

¶ 34 Here, the trial court clearly was not persuaded that Appellant had learned his lesson about driving at excessive speeds,[5] and felt that it needed to impress strongly upon Appellant the importance of having

---

5. The trial court expressed this concern to Appellant when addressing him at sentencing: "The presentence report would indicate that you repeatedly drove [recklessly], not just with this boy, but with your other children, with reckless disregard for what would happen to you or them." N.T. 2/14/05 at 69. "I think it is ironic, Mr. Fullin, that you are a victim of an automobile accident and, yet, you continue to drive in this reckless fashion and put yourself and others and, particularly your children, at risk of what ultimately happened." *Id.* at 69. "I find the purchase of the new car insensitive. And I do feel that there is this need for speed that, quite frankly, that I can't comprehend. It's got to stop." *Id.* at 71.

regard for the safety of others, particularly his children. It did not abuse its discretion when doing so. Appellant's fourth argument fails.

¶ 35 For all of the aforementioned reasons, we affirm.

¶ 36 Affirmed.