J-S46024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF |
|---|---|
| | PENNSYLVANIA |
| Appellee | |
| v. | |
| CARLOS INGA | |
| Appellant | No. 2953 EDA 2014 |

Appeal from the Judgment of Sentence July 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001884-2012

BEFORE:  MUNDY, OLSON and MUSMANNO, JJ.:

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 09, 2015**

Appellant, Carlos Inga, appeals from the judgment of sentence entered on July 14, 2014, as made final by the denial of Appellant's post-sentence motion on September 18, 2014.  We vacate and remand for resentencing.

The learned trial court ably summarized the underlying facts and procedural posture of this case.  As the trial court explained:

> Appellant [] was arrested [in 2011.  The Commonwealth later charged Appellant with numerous crimes that allegedly occurred in 2007, including:  rape by forcible compulsion, unlawful contact with a minor, unlawful restraint, sexual assault, corruption of minors, and indecent assault.[1]]
>
> The instant matter commenced with Appellant pleading not guilty to all charges and indicating that he wished to have a

---

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 6318(a)(1), 2902(a)(1), 3124.1, 6301(a)(1), and 3126(a)(2), respectively.

jury trial. [During Appellant's trial, t]he Commonwealth introduced [the] testimony of[: the victim's stepfather, D.M.;] [the victim's brother, A.T.;] Susan Tran[; the victim;] [the victim's sister, M.; and,] Detective Thomas Brown. The defense introduced [the] testimony of Robert Chin, William Cuff, and [Appellant]. . . . [The testimony at trial was as follows]:

1. In 2007, [the victim] worked in her parent's [Philadelphia restaurant]. . . . At the time, [the victim] was 16 years old.

2. Many of [the victim's] family members also worked in the restaurant, including her parents (mother and stepfather), her sister [M.], and her brother, [G.T.]

3. [The victim] would help out her family with various administrative tasks at the restaurant. She would answer the phone, take delivery orders, serve as hostess, help prepare food, cut up vegetables and meat in the kitchen, clear tables, etc.

4. The restaurant was often quiet and not terribly busy. In short, business was slow.

5. When the restaurant was not busy, [the victim] would spend much of her time cleaning the tables and putting away plates and silverware for her family.

6. When the restaurant was busy with people and [the victim] was helping out with work inside of the kitchen, she would often find herself alone in the back with just the cook and occasionally the dishwasher.

7. [Appellant] was the cook/chef [whom the victim's family] had employed at that time and he would sometimes be alone with [the victim] in the kitchen. [The victim] would assist [Appellant] in preparing food and with heating up some of the food.

8. [Appellant] would talk to [the victim] while they were in the kitchen and [he] made her feel uncomfortable on multiple occasions.

9. On one such occasion, [Appellant] touched [the victim's] private parts with his hands while they were working together in the kitchen. On another such occasion, he pulled her pants down while they were alone in a large refrigerator room area.

10. On or around May [] 2007, [Appellant] touched [the victim's] hand and made her put her hand on his penis. [The victim] indicated that her hand was placed on top of his clothes and not under his clothes.

11. [The victim] testified that she was uncomfortable and took her hand away. [The victim testified] . . . that she did not want [Appellant] to take her by the hand and that he had forced her to touch his penis.

[The victim testified that Appellant raped her in or around May 2007. According to the victim, at the time, she and Appellant were "upstairs in the restaurant," when Appellant grabbed her arm, pulled her onto the couch, "forced down" her pants and underwear, and inserted his penis into her vagina. N.T. Trial, 4/9/14, at 116-121.]

12. [The victim] has serious disabilities. The record [] reflects that [the victim] has difficulty processing information; she has spatial issues, intellectual disabilities (detailed below), etc. Further, hundreds of pages of documents detailing her health history and disabilities were submitted into evidence.

13. [The victim's] stepfather, [D.M.], explained that his stepdaughter has been diagnosed with various intellectual deficits (slight mental retardation and attention deficit [hyperactivity] disorder), emotional problems, and anxiety. She has structural growth retardation and struggled with her academics in normal school. Her stepfather stepped in as an advocate for her to get a proper education. [As the victim's stepfather testified, the victim:] is a very compassionate and kind individual[;] has difficulty telling time and has problems with interspatial recognition[;] withdraws and is very shy[; and,] has trouble engaging with her peers. As a result of these problems, [the victim's stepfather testified that the victim] had problems at school

and was made fun of. Moreover, as a result of her specific disabilities, [the victim] has trouble communicating.

. . .

15. [After the alleged rape occurred, but on the same night, the victim] told [Susan] Tran that she was alone at times with [Appellant] and that [Appellant] had requested to see her alone and even requested that her parents drop her off at the restaurant to be alone with him. Ms. Tran [testified that she] was most alarmed when she found out about that information. [Ms. Tran testified that she considered] it [] inappropriate for a 16-year-old to be requested to come see a grown man alone. . . . Ms. Tran asked [the victim] additional questions about her contact with [Appellant] and whether he had ever touched her.

16. [The victim] then told Ms. Tran that she had been inappropriately touched by [Appellant. However, the victim did not tell Ms. Tran that Appellant had raped her earlier in the night].

17. Immediately afterwards, Ms. [Tran] told [the victim's] brother about what [the victim had told her]. He was in the restaurant at the time. He was furious when he learned about the [touching]. He went into the kitchen and started yelling at [Appellant]. [That day], he fired [Appellant. Evidence at trial demonstrates that Appellant was fired on May 15, 2007. **See** N.T. Trial, 4/10/14, at 90-91 and 154.]

18. Eventually, [the victim] spoke to her sister [M.] about [both the inappropriate touching and the alleged rape]. . . . [The victim testified] that [M.] was [] upset [] when she told her about [what Appellant had done].

19. In 2011, [the victim] finally spoke to her mother about these events and that led to her speaking to a police detective about the assault and alleged rape. . . . [The victim testified that her mother] was upset that she had waited so long to tell her about everything that [had] happened [].

20. [Ms. Tran] testified that she noticed major changes in [the victim's] personality, mood, and demeanor after the

[alleged rape] took place. . . . Ms. [Tran] testified that [the victim] was visibly wrestling with a great deal of emotion and had exhibited signs of frustration and trauma after the assault happened[. Ms. Tran testified]:

> I noticed that she – at the time that she told me, I could see that she was very scared, like she was holding something inside. And then once she told me, I could tell she was relieved that she told me. She was letting something out but I felt like I should have done more and I didn't. And her mood, she was very – it was very up and down all the time . . . she's a happy girl, sweet girl. She's so kind. And then when I see her just completely turn 360, like she's not even who she is, and I wondered what's wrong, why? Why her? She didn't do anything.

21. Ms. [Tran] also [testified] that [the victim] seemed less lively after the [alleged rape]. In addition, [the victim's brother testified] that [the victim] seemed depressed and had serious emotional difficulties after the [alleged rape] occurred in or around May of 2007. Similarly, [the victim's] mother [testified] that she noticed her daughter's mood and demeanor were noticeably different; she was reportedly more angry, moody, and argumentative. Likewise, [the victim's] stepfather [testified] that he noticed his stepdaughter's mood and demeanor change[] after 2007: "Something was hounding her. She had nightmares, screams at night, and we came over. We tried to wake her up and then she was in tears."

. . .

At the culmination of the evidence presented, . . . [the jury found Appellant] not guilty of [] rape, unlawful restraint[,] and sexual assault. The jury found Appellant guilty, beyond a reasonable doubt, of the indecent assault [], unlawful contact with minors [], and corruption of [minors] [] charges. . . .

On July 14, 2014, [the trial court sentenced] Appellant [] as follows: [one to three years in prison on the indecent assault conviction; one-and-a-half to three years in prison on the unlawful contact with minors conviction; and, one to

three years in prison on the corruption of minors conviction. The trial court ordered the three sentences to run consecutively, resulting in an aggregate sentence of three-and-a-half to nine years in prison. However, during the sentencing hearing, the trial court did not provide any on-the-record explanation for its particular sentence.[2]]. . . .

Appellant's [counsel filed a timely] motion for reconsideration of the above sentence. . . . [On September 18, 2014, following oral argument, the trial court denied Appellant's post-sentence motion].

Trial Court Opinion, 1/16/15, at 1-7 (some internal capitalization and citations omitted).

Appellant raises the following claims to this Court:

[1.] Did the trial court commit an abuse of discretion by failing to charge the jury in accordance with 23 [Pa.C.S.A.] § 6311, which requires certain persons to report suspected child abuse?

_____

[2] Specifically, during Appellant's sentencing hearing, the trial court declared:

Okay, the jury has spoken in this case. Of course they did not find you guilty of the most serious charge of rape but you were found guilty of unlawful contact, corruption of minors[,] and indecent assault.

I'll sentence you to the following:

On the unlawful contact charge I sentence you to one and a half to three years. Consecutive to that corruption of minors one to three years. Consecutive to that on indecent assault one to three years.

That's the order of the Court. . . .

N.T. Sentencing, 7/14/14, at 38-39.

[2.] Did the sentencing court commit an abuse of discretion by imposing sentences outside the recommended guideline[] ranges without providing adequate reasons for doing so?

[3.] Did the sentencing court commit an abuse of discretion by improperly considering offenses Appellant was found not guilty of committing in structuring Appellant's sentence?

[4.] Did the sentencing court commit an abuse of discretion by imposing sentences that were unreasonable and excessive under the circumstances and which failed to take into account Appellant's rehabilitative needs?

Appellant's Brief at 4 (some internal capitalization omitted).

First, Appellant claims that the trial court erred when it "refus[ed] a defense request that the jury be charged in accordance with 23 [Pa.C.S.A.] § 6311, which requires certain persons to report suspected child abuse." Appellant's Brief at 10. This claim fails.

As this Court explained:

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

- 7 -

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (internal quotations and citations omitted). Further, "Pennsylvania law makes [it] clear that the court is bound to charge the jury only on the law applicable to the factual parameters of a particular case and that it may not instruct the jury on inapplicable legal issues. Consequently, where the record evidence fails to satisfy the elements of a particular legal doctrine, the court may not discuss that doctrine in its charge." *Geise v. Nationwide Life & Annuity Co.*, 939 A.2d 409, 422 (Pa. Super. 2007) (internal quotations, citations, and corrections omitted).

We will explain the basis for Appellant's current argument.

During Appellant's cross-examination of the victim, the victim testified that she "told [her] emotional support [teacher] at [school] in [] between the fall of [2007] and the spring of [2008] that [she] had been raped." N.T. Trial, 4/9/14, at 141. However, during Appellant's trial, Appellant introduced the victim's school records into evidence; and, as Appellant noted during trial, there was "no mention anywhere in any [school] record about a complaint to a teacher." N.T. Trial, 4/10/14, at 220. As Appellant argued to the trial court, if the victim had informed an employee of her high school about the alleged rape, 23 Pa.C.S.A. § 6311 would have required – under penalty of criminal prosecution – that the school employee report the suspected child abuse. *See* N.T. Trial, 4/10/14, at 251-254 and N.T. Trial, 4/11/14, at 4-5 and 39-41. Appellant claimed that the absence of such a report in the victim's school records cast doubt upon the victim's credibility.

Based upon the above argument, Appellant requested that the trial court instruct the jury on 23 Pa.C.S.A. § 6311. The trial court refused. Now on appeal, Appellant claims that the trial court's refusal to instruct the jury on Section 6311 constituted prejudicial error and requires a new trial. Appellant claims that knowledge of the statute "would have permitted the jury to consider the lack of a report by a school official in the school records in its assessment of the credibility of [the victim; the] lack of a report of child abuse in a situation where one was statutorily required strongly implies that no such complaint was made." Appellant's Brief at 13.

Appellant's claim fails. Indeed, the mere fact that a child abuse report was not found in the victim's **school records** is irrelevant on the issue of whether the victim "told [her] emotional support [teacher] at [school] in [] between the fall of [2007] and the spring of [2008] that [she] had been raped." *See* N.T. Trial, 4/9/14, at 141.

In "the fall of [2007] and the spring of [2008]" – which is when the victim testified that she told informed her emotional support school teacher of the alleged rape – the relevant portions of the Child Protective Services Law read:

> **§ 6311. Persons required to report suspected child abuse.**
>
> **(a) General rule.**—A person who, in the course of employment, occupation or practice of a profession, comes into contact with children **shall report or cause a report to be made in accordance with section 6313** (relating to reporting procedure) when the person has reasonable

cause to suspect, on the basis of medical, professional or other training and experience, that a child under the care, supervision, guidance or training of that person or of an agency, institution, organization or other entity with which that person is affiliated is a victim of child abuse, including child abuse by an individual who is not a perpetrator. . . .

**(b) Enumeration of persons required to report.**—Persons required to report under subsection (a) include, but are not limited to, any licensed physician, osteopath, medical examiner, coroner, funeral director, dentist, optometrist, chiropractor, podiatrist, intern, registered nurse, licensed practical nurse, hospital personnel engaged in the admission, examination, care or treatment of persons, Christian Science practitioner, member of the clergy, school administrator, school teacher, school nurse, social services worker, day-care center worker or any other child-care or foster-care worker, mental health professional, peace officer or law enforcement official.

**(c) Staff members of institutions, etc.**—Whenever a person is required to report under subsection (b) in the capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, that person shall immediately notify the person in charge of the institution, school, facility or agency or the designated agent of the person in charge. Upon notification, the person in charge or the designated agent, if any, shall assume the responsibility and have the legal obligation to report or cause a report **to be made in accordance with section 6313**. This chapter does not require more than one report from any such institution, school, facility or agency.

23 Pa.C.S.A. § 6311 (effective May 29, 2007 to December 30, 2014) (some

emphasis added).

Section 6313 then provided:

**§ 6313. Reporting procedure.**

**(a) General rule.**—Reports from persons required to report under section 6311 (relating to persons required to report suspected child abuse) shall be made immediately by

- 10 -

telephone and in writing within 48 hours after the oral report.

**(b) Oral reports.**—**Oral reports shall be made to the department**[3] pursuant to Subchapter C (relating to powers and duties of department) **and may be made to the appropriate county agency**.[4]  When oral reports of suspected child abuse are initially received at the county agency, the protective services staff shall, after seeing to the immediate safety of the child and other children in the home, immediately notify the department of the receipt of the report, which is to be held in the pending complaint file as provided in Subchapter C.  The initial child abuse report summary shall be supplemented with a written report when a determination is made as to whether a report of suspected child abuse is a founded report or an unfounded report or an indicated report.

**(c) Written reports.**—**Written reports from persons required to report under section 6311 shall be made to the appropriate county agency** in a manner and on forms the department prescribes by regulation.  The written reports shall include the following information if available . . . .

23 Pa.C.S.A. § 6313 (effective July 1, 1995 to December 30, 2014) (some

emphasis added).

_____

[3] At the time, the Child Protective Services Law defined the term "the department" as "the Department of Public Welfare of the Commonwealth." 23 Pa.C.S.A. § 6303 (effective July 1, 1995 to December 30, 2014).

[4] At the time (and still today), the Child Protective Services Law defined the term "county agency" as "[t]he county children and youth social service agency established pursuant to section 405 of the act of June 24, 1937 (P.L. 2017, No. 396), known as the County Institution District Law,[] or its successor, and supervised by the Department of Public Welfare under Article IX of the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code."  23 Pa.C.S.A. § 6303 (effective July 1, 1995).

Finally, Section 6331 of the Child Protective Services Law, entitled "establishment of pending complaint file, Statewide central register and file of unfounded reports," provided:

There shall be established **in the department**:

. . .

(2) A Statewide central register of child abuse which shall consist of founded and indicated reports.

23 Pa.C.S.A. § 6331 (effective July 1, 1995 to June 30, 2014) (emphasis added).

Again, on appeal, Appellant claims that the trial court erred when it refused to charge the jury on 23 Pa.C.S.A. § 6311, as there was no report of child abuse in the victim's school records and "the lack of a report of child abuse in a situation where one was statutorily required strongly implies that no such complaint [to the victim's emotional support teacher] was made." Appellant's Brief at 10-13.

A review of the above-quoted statutes demonstrates the fallacy in Appellant's argument. Certainly, from the above statutes, it is clear that, even if the victim's "emotional support teacher" were an "enumerated person required to report" child abuse under Section 6311(b), any such report would have gone to either the Department of Public Welfare of the Commonwealth or the county children and youth social service agency – not the victim's school. 23 Pa.C.S.A. § 6313 (effective July 1, 1995 to December 30, 2014). Further, the report would not have been maintained

by the victim's school – instead, the Child Protective Services Law required that such reports be maintained by the Department of Public Welfare. 23 Pa.C.S.A. § 6331 (effective July 1, 1995 to June 30, 2014). Therefore, the lack of a report in the victim's **school records** does not (as Appellant claims) "impl[y] that no such complaint was made." Appellant's Brief at 13. Rather, the lack of a mandated report of child abuse in the victim's school records is **irrelevant** on the issue of whether the victim "told [her] emotional support [teacher] at [school] in [] between the fall of [2007] and the spring of [2008] that [she] had been raped." N.T. Trial, 4/9/14, at 141. Therefore, Appellant was not entitled to a jury instruction regarding 23 Pa.C.S.A. § 6311. *Geise*, 939 A.2d at 422 ("the court is bound to charge the jury only on the law applicable to the factual parameters of a particular case and that it may not instruct the jury on inapplicable legal issues") (internal quotations, citations, and corrections omitted). Appellant's claim to the contrary fails.

Next, Appellant claims that the trial court abused its discretion at sentencing because it sentenced him outside of the sentencing guideline ranges on one conviction and in the aggravated sentencing guideline range on the remaining two convictions, and yet did not provide any rationale for its sentence. We are constrained to agree. Therefore, we must vacate Appellant's judgment of sentence and remand for resentencing.

Appellant challenges the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing

judge, whose judgment will not be disturbed absent an abuse of discretion."

***Commonwealth v. Ritchey***, 779 A.2d 1183, 1185 (Pa. Super. 2001).

Moreover, pursuant to statute, Appellant does not have an automatic right to

appeal the discretionary aspects of his sentence. ***See*** 42 Pa.C.S.A.

§ 9781(b). Instead, Appellant must petition this Court for permission to

appeal the discretionary aspects of his sentence. ***Id.***

> [t]o reach the merits of a discretionary sentencing issue, we
> conduct a four-part analysis to determine: (1) whether
> appellant has filed a timely notice of appeal, Pa.R.A.P. 902,
> 903; (2) whether the issue was properly preserved at
> sentencing or in a motion to reconsider and modify
> sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief
> has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there
> is a substantial question that the sentence appealed from is
> not appropriate under the Sentencing Code, [42 Pa.C.S.A.]
> § 9781(b).

***Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa. Super. 2007).

In the case at bar, Appellant satisfied the first three requirements, as

he filed a timely notice of appeal, properly preserved his discretionary

challenge in a post-sentence motion, and facially complied with Pennsylvania

Rule of Appellate Procedure 2119(f). We must now determine whether

Appellant presented a "substantial question that the sentence appealed from

is not appropriate under the Sentencing Code." ***Cook***, 941 A.2d at 11.

Generally, to raise a substantial question, an appellant must "advance

a colorable argument that the trial judge's actions were: (1) inconsistent

with a specific provision of the Sentencing Code; or (2) contrary to the

fundamental norms which underlie the sentencing process." ***Commonwealth v. McKiel***, 629 A.2d 1012, 1013 (Pa. Super. 1993); ***Commonwealth v. Goggins***, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). Moreover, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. ***Goggins***, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.*** at 727 (internal emphasis omitted).

Appellant claims that the trial court abused its discretion because it sentenced him outside of the sentencing guideline ranges on his unlawful contact with a minor conviction and in the aggravated guideline ranges on his corruption of minors and indecent assault convictions – and yet did not provide any rationale for its sentence. This claim raises a substantial question under the Sentencing Code, as it asserts that the trial court's action was "inconsistent with a specific provision of the Sentencing Code." Specifically, Appellant asserts that the trial court acted in contravention of 42 Pa.C.S.A. § 9721(b), which states in relevant part:

> In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences an offender following revocation of probation, county intermediate punishment or State intermediate punishment or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of

sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing . . . the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission, as established under section 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S.A. § 9721(b).

Further, as this Court held:

when sentencing a defendant beyond the ranges recommended by the sentencing guidelines, the trial court must state its reasons for departing from the guidelines on the record. When doing so, a trial judge must demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, **so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.**

*Commonwealth v. Warren*, 84 A.3d 1092 (Pa. Super. 2014) (internal quotations, citations, and corrections omitted) (emphasis in original); *see also Commonwealth v. Naranjo*, 53 A.3d 66, 72 (Pa. Super. 2012) ("Appellant maintains that the sentencing court violated the Sentencing Code by failing to state sufficient reasons for imposing a sentence outside the sentencing guidelines. This raises a substantial question"); *Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009)

(same); *see also Commonwealth v. Booze*, 953 A.2d 1263, 1278 (Pa. Super. 2008) ("an allegation that the [trial] court failed to state adequate reasons on the record for imposing an aggravated-range sentence . . . raises a substantial question for our review"); *Commonwealth v. Fullin*, 892 A.2d 843, 850 (Pa. Super. 2006) (same).

Since Appellant raised a substantial question, we may reach the merits of Appellant's claim that, at sentencing, the trial court failed to adequately state the reasons for sentencing Appellant outside of the guideline ranges on one conviction and in the aggravated guideline range on the other two convictions.

Appellant is correct that the trial court sentenced him outside of the sentencing guideline ranges on his unlawful contact with minors conviction and in the aggravated guideline ranges on his corruption of minors and indecent assault convictions.[5]  Appellant is also correct that the trial court provided no reason for its sentence.  As such, the trial court abused its discretion by failing to "make as a part of the record, and disclose in open

_____

[5] At sentencing, the parties and the trial court agreed that the sentencing guideline ranges for Appellant's three convictions were all "[restorative sanctions] to nine [months in prison], plus or minus three [months]."  N.T. Sentencing, 7/14/14, at 9.  The trial court then sentenced Appellant to one-and-a-half to three years in prison on the unlawful contact with minors conviction (an outside-the-guideline-range sentence); one to three years in prison on the corruption of minors conviction (an aggravated range sentence); and, one to three years in prison on the indecent assault conviction (an aggravated range sentence).

court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b). We must, therefore, vacate Appellant's judgment of sentence and remand for resentencing.[6, 7]

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Musmanno joins.

Judge Mundy concurs in the result.

_____

[6] Within the Commonwealth's brief to this Court, the Commonwealth claims that the trial court cured its error by stating the reasons for its sentence during Appellant's post-sentence motion hearing. This argument fails, as Section 9721(b) plainly requires that the trial court "make as a part of the record, **and disclose in open court at the time of sentencing**, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b). The post-sentence motion hearing was not "at the time of sentencing;" therefore, the Commonwealth's argument fails. ***See also Commonwealth v. Warren***, 84 A.3d 1092, 1097-1098 (Pa. Super. 2014) (at sentencing, the trial court did not "evince an awareness of the sentencing guidelines or explain [its] decision to deviate therefrom, as was required;" however, "[t]he trial court attempted to ameliorate [its] error in its subsequent Pa.R.A.P. 1925(a) opinion by stating additional reasons for the sentence;" this Court held that the trial court's after-the-fact attempt to rectify its error "does not suffice" because Section 9721(b) "requires that the trial court state its reasons for the sentence in court at the time of sentencing").

[7] Given our disposition, we will not consider Appellant's remaining two claims on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/9/2015</u>