J-S28019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRIAN LEE SCHAFFER | |
| Appellant | No. 1198 WDA 2016 |

Appeal from the Judgment of Sentence May 9, 2016
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s): CP-17-CR-0000699-2015

BEFORE:  OLSON, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.:          **FILED OCTOBER 24, 2017**

Brian Lee Schaffer appeals from the May 9, 2016 judgment of sentence entered in the Clearfield County Court of Common Pleas following his convictions for possession with intent to deliver a controlled substance ("PWID") and involuntary manslaughter.[1]  We affirm.

The evidence at trial established the following facts.  On January 2, 2015, Schaffer, Ameyanna Sanchez ("Victim"), and Kevin Mongan were at Victim's house, along with Victim's son, who was upstairs in his bedroom. N.T., 3/28/16, at 86-88, 91.  Victim and Schaffer previously had been in a relationship, but Mongan was Victim's current boyfriend.  *Id.* at 78, 87.  The

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S. § 2504(a), respectively.

three were at Victim's house drinking tequila and consuming methamphetamines provided by Schaffer. *Id.* at 89-90, 102. At approximately 3:00 a.m., Mongan and Victim had an argument, after which Mongan left. *Id.* at 91-92. Victim, who suffered from a mental illness and had attempted suicide in the past, began hearing voices. *Id.* at 46. She asked Schaffer, who was aware of her mental health history, to check the house for people. *Id.*

At some point, Schaffer and Victim got into an argument. N.T., 3/29/16, at 81. During the argument, Schaffer retrieved a gun from his truck "to scare [Victim] and to prove his point that he wasn't lying." *Id.* Corporal Matthew Robertson, who interviewed Schaffer, testified that in Schaffer's first written statement,[2] he admitted that he "removed the magazine from the weapon, put the gun to his head and sa[id], [']If I'm lying, I'm dying.[']" *Id.* Schaffer did not pull the trigger, but told Victim "See, it didn't go off, I'm not lying." *Id.* Victim then asked to see the weapon and, realizing it had no bullets, asked how to load the gun. *Id.*

_____

[2] Schaffer provided multiple oral and written statements to police. Those statements were inconsistent in several respects, including who brought the gun into the house, whether Schaffer gave Victim the gun or whether Victim took the gun from him, whether he was upstairs when Victim shot herself or whether she did it in his presence, and whether Schaffer picked up the gun from the floor and placed it on the coffee table. N.T., 3/29/16, at 77, 79, 85, 89-93. Due to the earlier inconsistent statements, Corporal Robertson video-recorded the remainder of his interview of Schaffer. *Id.* at 94.

While Victim held the weapon in her hands, Schaffer loaded the gun. *Id.* at 82. Victim "put the gun to her head and said you think I won't do it. She had a stare in her eyes. She put it to her head and pulled the trigger, right here." *Id.* at 87. Schaffer then called 911. *Id.* at 93.

On March 31, 2016, a jury convicted Schaffer of the aforementioned offenses. On May 9, 2016, the trial court sentenced Schaffer to 2 to 5 years' incarceration for involuntary manslaughter and 2 to 10 years' incarceration for PWID, to be served consecutively. On May 10, 2016, Schaffer filed a motion for reconsideration of sentence. On July 21, 2016, the trial court denied his motion. Schaffer timely filed a notice of appeal.

Schaffer raises the following issue on appeal: "Whether the trial court erred when using an element of the crime to aggravate the sentence." Schaffer's Br. at vi.

Schaffer challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Before we address such a challenge, we first determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013) (quoting ***Commonwealth v. Malovich***, 903 A.2d 1247, 1250 (Pa.Super. 2006)).

Schaffer filed a timely notice of appeal, preserved his claim in a timely post-sentence motion, and included in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). We must now determine whether he has raised a substantial question that the sentence is inappropriate under the Sentencing Code and, if so, review the merits.

In his Rule 2119(f) statement, Schaffer argues that the sentence imposed by the trial court was excessive and inappropriate under the Sentencing Code because the trial court relied on elements of the crime as aggravating factors in sentencing him outside the aggravated range of the Sentencing Guidelines. We conclude that Schaffer has raised a substantial question for our review. ***See Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa.Super. 2013) (finding substantial question where defendant raises "plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process") (quoting ***Commonwealth v. Naranjo***, 53 A.3d 66, 72 (Pa.Super. 2012)); ***see also Commonwealth v. Fullin***, 892 A.2d 843, 848 (Pa.Super. 2006) (concluding appellant raised substantial question where he argued "that the trial court improperly based [appellant's] aggravated range sentence on a factor that constituted an element of the offense").

Schaffer contends that, in imposing a sentence outside the aggravated range of the Sentencing Guidelines, the trial court did not state any aggravating factors. Schaffer argues that the only factor mentioned by the trial court during sentencing was the "death of another," which it stated on two occasions, and which is already an element of the crime. Schaffer further argues that the trial court attempted to remedy its error by relying on the term "recklessness" in its Rule 1925(a) opinion, but that this also is an element of the crime.

"Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super. 2010). "An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Id.* at 1283.

In determining whether the trial court relied on factors that are already an element of the crime in imposing a non-guideline sentence, we have explained that

> [t]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines

- 5 -

accomplish the above purposes by providing a norm for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases . . . .

The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather, upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.

*Fullin*, 892 A.2d at 848 (quoting *Commonwealth v. Walls*, 846 A.2d 152, 158 (Pa.Super. 2004)).

At sentencing, the trial court explained its reasons for sentencing Schaffer outside the aggravated range of the Sentencing Guidelines. The trial court stated:

With what happened here, the extremely high level of recklessness and general indifference that was exhibited here by [Schaffer] in going out to that vehicle and bringing that loaded gun back into that house and handing it to somebody who had not only been doing methamphetamine for days, probably was suffering from sleep deprivation, had mental health problems, had prior suicide attempts, it was just a guaranteed recipe for a disaster.

I just can't understand why a loaded handgun would be introduced into the middle of what was already an exceedingly high-risk drug addiction/mental health recipe. I just don't understand it. . . .

You know, you're doing these kind of hard drugs, you're putting yourself at a tremendous risk for overdoses and problems and just in general for a disaster. And then you factor into it use, as they had indicated, over an extended period of time, you throw past suicide attempts into it, you throw mental health problems into it, there's a gigantic level of instability; and then you take a loaded gun and throw that in the middle of it, and the gentleman's actions in taking that gun and purportedly holding it up to his head, where he knew it wasn't going to go off, that's certainly what appeared to me, and then handing it to her, I absolutely cannot understand it.

N.T., 5/2/16, at 4-6. Further, the trial court stated on the record that it was aware that it was sentencing Schaffer outside the aggravated range of the Sentencing Guidelines, but that after considering all of the facts in this case, as well as the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and Schaffer's rehabilitative needs, it did not consider the Sentencing Guidelines to be appropriate given the atypical nature of the crime. *Id.* at 5; Opinion, 10/21/16, at 4.

Moreover, the trial court

had the benefit of a pre-sentence investigation in determining an appropriate sentence.[3]

. . .

---

[3] "Where pre-sentence reports exist, we . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa.Super. 2009) (quoting **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988)).

- 7 -

> [T]he Court indicated clearly its reasons for sentencing outside the guidelines, namely the high level of recklessness that made this case atypical and which did not include the death of another.
>
> . . .
>
> [T]he Court maintains that the reasons for imposing the aforementioned sentence upon [Schaffer] were consistent with the protection of the public, the gravity of the offense as it related to the impact on the life of the victim and the community, and the rehabilitative needs of [Schaffer]. Further, based on the extreme recklessness exhibited in this case, as previously mentioned, this Court believes that the sentence imposed was appropriate given the atypical circumstances of the case.

Opinion, 10/21/16, at 3-4.

Contrary to Schaffer's claim, the trial court did not merely focus on the "death of another" and the "recklessness" of Schaffer's actions; rather, it properly considered all of the evidence and adequately stated its reasons on the record. That the trial court mentioned an element of the crime in fashioning Schaffer's sentence does not demonstrate that it improperly relied on that element when imposing a sentence outside the aggravated range of the Sentencing Guidelines.

Accordingly, we conclude that the trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judge Olson joins the memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/24/2017