J-S18021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARNELL BASON | |
| Appellant | No. 3718 EDA 2015 |

Appeal from the Judgment of Sentence dated November 6, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006896-2010
CP-51-CR-0006898-2010
CP-51-CR-0006947-2010

BEFORE: PANELLA, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.:                **FILED MAY 24, 2017**

Appellant, Darnell Bason, appeals from the judgment of sentence entered on November 6, 2015, in the Philadelphia County Court of Common Pleas, following this Court's remand to the trial court to re-sentence Appellant for his trial convictions for one count each of robbery – threat of immediate serious injury, possession of an instrument of crime with intent, escape, and robbery of a motor vehicle, and for two counts of criminal conspiracy relating to each of the robbery charges.[1]  We affirm.

The facts of this case are as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 907(a), 5121(a), 3702(a), 903(a)(1), respectively.

Complainant Steven Evans testified that at approximately 1:00 in the morning on April 29, 2010 he was "hacking", i.e. working as an unlicensed taxicab driver, near 52nd and Market Streets in Philadelphia. Mr. Evans's vehicle was a green Chevrolet Blazer (Blazer). Mr. Evans was hailed by two males and he drove them to the intersection of 57th and Haverford. One of the men was [Appellant], who sat in the back seat while the other man sat in the front seat. After parking the car, the man in the front seat pulled out a knife and told Mr. Evans: "get out, I'm taking the car." [Appellant] pulled out a gun and also told Mr. Evans to "get out." Mr. Evans got out and Defendant and the other man drove away in the vehicle.

Philadelphia police officer Andre Howard testified that he and his partner Officer Nick Louis were the first to arrive at the location of the carjacking and meet with Mr. Evans, at which point they put out a "flash" describing the stolen vehicle. Philadelphia police detective Matthew Farley testified that at 9:00 that morning he showed Mr. Evans a photo spread, and Mr. Evans picked out a photo of [Appellant] from the array.

Complainant Edward Burse testified that at approximately 6:30 on the morning of April 29, 2010 he was walking to work at the Mercy Medical Center Hospital on 53rd Street and Cedar Avenue in Philadelphia when he suddenly heard a "loud screeching" and saw a green Blazer run a light and pull up quickly to the side of the curb. A man ran up behind him, saying "give me your money." A struggled ensued, during which the assailant poked at Mr. Burse with a knife, until [Appellant] appeared and pointed a gun at him and said "You're taking too long, give me the money, give me the money." Mr. Burse surrendered his wallet and the two drove away in the Blazer.

After the attack Mr. Burse proceeded to the Hospital and called the police, who arrived shortly after and took his statement. When the officers learned that potential suspects had been apprehended Mr. Burse was driven to the scene and asked to identify the men. Mr. Burse testified that he recognized the two men as his assailants, and when shown a picture of [Appellant] (Commonwealth Exhibit 8) at trial he identified him as being one of the attackers.

Philadelphia police officer Malik Abdulhadi testified that on April 29, 2010 he was called to the area of the Mercy Medical Center

Hospital to interview the complainant Edward Burse. Officer Abdulhadi relayed the information he collected from Mr. Burse over the radio and shortly after he received information that a suspect had been apprehended. Officer Abdulhadi transported Mr. Burse to the scene. Officer Abdulhadi testified that upon arriving Mr. Burse identified [Appellant] as one of the individuals who robbed him.

Philadelphia police officer Anthony Washington testified that on April 29, 2010 he was working a midnight to 8:00 a.m. shift in the 18th District of Philadelphia. Officer Washington was on patrol in a marked police car with his partner Officer Denia Starks when at approximately 6:15 a.m[.] he received a robbery in progress call "for 54th and Cedar involving two black makes inside of a green Chevy Blazer SUV." Approximately fifteen minutes later the officers observed a green Blazer and turned on their overhead lights in order to get the vehicle to stop. At this point the Blazer backed into a parking spot and the driver fled on foot. Officer Washington pursued the driver, [Appellant], who pulled a black handgun from his waistband and threw it under a parked car. Because there was a young girl on the street Officer Washington retrieved the gun before continuing his chase. [Appellant] ran down an alleyway which Officer Washington knew to have only one other exit, at which time [Appellant] was taken into custody by other police officers. Officer Washington was shown a photograph of [Appellant] at trial and identified him as the driver of the Blazer he had pursued.

Sergeant Kenneth Flaville testified that after the two suspects who had been driving the Blazer were taken into custody he conducted a search of the vehicle and found in its interior a wallet belonging to Edward Burse. Officer Starks testified that while Officer Washington was chasing [Appellant] she detained the passenger of the Blazer. The passenger had not attempted to flee. Officer Starks later conducted an investigation on the vehicle and determined that neither [Appellant] nor the passenger was the owner of the Blazer.

Philadelphia police officer Ronald Browne testified that he transported [Appellant] to police headquarters, but prior to entering the building, [Appellant] "made kind of a motion and a noise like he was injured." Officer Browne asked [Appellant] what was wrong and as he opened the door [Appellant], whose left arm was free from his handcuffs, began to run. He was

J-S18021-17

chased by Officer Browne and other officers in the vicinity. Officer Browne tackled [Appellant], who fell on Officer Browne's hand and broke it. [Appellant] struggled with the officers after he was tackled, "flailing around" and kicking at the officers before he could be put in handcuffs again. . . . [Appellant] was released from custody and placed on house arrest on January 3, 2012. . . .

Philadelphia police officer Yvette Rawls-Guyton testified that she worked for the pretrial unit of the First Judicial District and that that on Friday, May 11, 2012 she was notified by the "Warrant Unit" that [Appellant's] electronic monitoring strap had been tampered with. In response Officer Rawls-Guyton placed a phone call to the address where [Appellant] had been living, but the person who answered the call was unable to provide information regarding [Appellant's] whereabouts. Officer Rawls-Guyton testified that she was notified by Sergeant Michael Roth of the "Warrant Unit", who had gone to [Appellant's] home to investigate, that [Appellant] was missing and that his electronic monitoring equipment had been recovered.

Trial Ct. Op., 11/20/13, at 3-8 (footnote omitted) (citations to the record omitted).

On January 9, 2013 [Appellant] was sentenced to consecutive periods of confinement at a State Correctional Institution of 5 to 10 years on the charge of Robbery - Threatens Serious Bodily Injury and 1 to 5 years on the charge of Conspiracy at CP-51-CR-0006896-2010, 1 to 2 years on the charge of Escape at CP-51-CR-0006898-2010, 5 to 10 years on the charge of Robbery of Motor Vehicle and 1 to 5 years on the charge of Conspiracy at CP-51-CR-0006947-2010, for a total period of confinement of 13 to 32 years.

*Id.* at 2. "The [trial] court imposed the mandatory minimum sentence for the robbery [– threat of immediate serious injury] conviction and the robbery of a motor vehicle conviction pursuant to 42 Pa.C.S. § 9712." *Commonwealth v. Bason*, No. 344 EDA 2013, at 2, 2014 WL 10753721, at *1 (Pa. Super., Dec. 11, 2014) (unpublished memorandum).

- 4 -

In Appellant's direct appeal, this Court "vacate[d] the judgment of sentence and remand[ed] for resentencing without consideration of any mandatory minimum sentence as provided by section 9712." *Bason*, No. 344 EDA 2013, at 6, 2014 WL 10753721, at *3 (citing *Alleyne v. United States*, 133 S.Ct. 2151 (2013); *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*) (holding 42 Pa.C.S. § 9712 unconstitutional), *appeal denied*, 121 A.3d 496 (Pa. 2015)).

> On November 6, 2015, [Appellant] was resentenced, in accordance with the order of the Superior Court, to the same period of confinement without considering mandatory minimums, [Appellant] was sentenced to consecutive periods of confinement at a State Correctional Institution of 5 to 10 years on the charge of Robbery and 1 to 5 years on the related charge of Conspiracy, 1 to 2 years on the charge of Escape, 5 to 10 years on the charge of Robbery of Motor Vehicle and 1 to 5 years on the related charge of Conspiracy, for a total period of confinement of 13 to 32 years.

Trial Ct. Op., 9/1/16, at 2-3 (footnote omitted). Appellant's new sentence thus had the same length of incarceration as the original sentence that we vacated in 2014. Appellant appeals from that sentence.

> Appellant now raises one issue for our review:

> Did not the trial court err as a matter of law and violate the principles of discretionary sentencing when, at [A]ppellant's re-sentencing, it merely re-imposed [A]ppellant's manifestly excessive original sentence of 13 to 32 years incarceration without giving any individualized consideration to [A]ppellant's personal history, rehabilitative needs and background, and which was in excess of what was necessary to address the gravity of the offense, the protection of the community, and [A]ppellant's rehabilitative needs?

Appellant's Brief at 3.

> When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. Pa. R.A.P. 2119(f).[2] . . . The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Glass*, 50 A.3d 720, 726-27 (Pa. Super. 2012) (citations and internal quotation marks omitted), *appeal denied*, 63 A.3d 774 (Pa. 2013).

Appellant included a Rule 2119(f) statement in a separate section of his brief, as required by the Appellate Rules. *See* Appellant's Brief at 7-9. There, Appellant stated that the trial court "reimposed [A]ppellant's original sentence of 13 to 32 years of confinement, without any explanation for imposition of the same manifestly excessive sentence in the absence of the applicability of any mandatory minimum sentences" and "failed to conduct any semblance of an individualized consideration of [A]ppellant's personal history, rehabilitative needs and background in fashioning his sentence." *Id.* at 7. Appellant continued that "[t]his Court should grant allowance of appeal

---

[2] It is also necessary for Appellant to have preserved the issue in the trial court and to have filed a timely appeal. *Commonwealth v. Colon*, 102 A.3d 1033, 1042-43 (Pa. Super. 2014), *appeal denied*, 109 A.3d 678 (Pa. 2015). Appellant's appeal was timely filed, and he preserved his challenge to the discretionary aspects of sentencing in his post-sentence motion and in his Pa.R.A.P. 1925(b) statement.

from the discretionary aspects of sentence because the trial court violated the express provisions of the Sentencing Code and imposed an excessive sentence, contrary to the fundamental norms which underlie the sentencing process." *Id.* (citing **Commonwealth v. Mouzon**, 812 A.2d 617, 624 (Pa. 2002)). He added:

> the sentencing court failed to carefully consider all relevant factors as set forth in Section 9721(b) of the Sentencing Code (Title 42).[3] Specifically, the sentence imposed far surpassed that required to protect the public, the community's interests, and failed to address [A]ppellant's personal history and rehabilitative needs.

*Id.* at 8.

Appellant's argument raises a substantial question. **See Commonwealth v. Buterbaugh**, 91 A.3d 1247, 1266 (Pa. Super.) (*en banc*) ("[a]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 . . . present a substantial question" (quotations and citation omitted)), **appeal denied**, 104 A.3d 1 (Pa. 2014). Hence, we will consider the substantive merits of his sentencing claim.

Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal

---

[3] 42 Pa.C.S. § 9721(b) states, in relevant part:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Schutzues*, 54 A.3d 86, 99 (Pa. Super. 2012), *appeal denied*, 67 A.3d 796 (Pa. 2013).

In addition:

Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Thus, "[w]here the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating

statutory factors." ***Commonwealth v. Fullin***, 892 A.2d 843, 849–50 (Pa. Super. 2006).

Here, the trial court explained:

In reimposing [Appellant]'s sentence on November 6, 2015, the [c]ourt fully reviewed the record from the January 9, 2013 sentencing, including the presentence investigation report, arguments of counsel, as well as testimony from both the [Appellant] and [Appellant]'s grandmother. In 2013, arguing that [Appellant] cut his electronic monitor when he was released on house arrest and failed to appear for trial, the Commonwealth recommended a sentence of 26 to 52 years. The Commonwealth also noted that [Appellant] had been on juvenile probation numerous times, and that the nature of his current offenses were particularly harmful due to the multiple victims and a police officer who broke his hand while apprehending [Appellant]. On reimposing [Appellant]'s sentence and referring to its decision in 2013, the court noted, "I gave him a break. I gave him -- a 13-year minimum was a break. It was in consideration of his age..." "Because of his youth and his lack of prior record for violent crime." In resentencing [Appellant], the Court has properly considered the factors of [Appellant]'s history, rehabilitative needs, and background.
. . .
[A]ll sentences imposed by the [trial c]ourt were well within the range of the sentencing guidelines. The guidelines recommended a minimum sentence of 54 to 66 months plus or minus 12 for each robbery count, a maximum penalty the same as robbery for each conspiracy count, and a maximum penalty of 7 years for escape. The sentences imposed for each individual conviction were all within the guidelines, but the [trial c]ourt ran them consecutively, totaling a period of confinement of 13 to 32 years.
. . .
[T]he [trial c]ourt had the original PSI report from [Appellant]'s January 9, 2013 sentencing. This report, in addition to arguments of counsel and testimony of [Appellant]'s witnesses made at the 2013 sentencing, sufficiently apprised the [trial c]ourt of the circumstances surrounding [Appellant]'s convictions. [Appellant]'s counsel was also able to make argument to the [c]ourt in 2015 that during his time in state custody he had exhibited good behavior. The [c]ourt was

sufficiently aware of [Appellant]'s personal history and because the circumstances of the [Appellant]'s crime had not changed during the period of his confinement, there was no need for an updated presentence investigation report.

Trial Ct. Op., 9/1/16, at 5-6, 8-9 (citing N.T., 1/9/13, at 3, 20-23, 25; N.T., 11/6/15, at 9, 12, 16).

We conclude that by considering the PSI, testimony from Appellant's first sentencing hearing, and counsel's arguments from both sentencing hearings, the trial court created a proper record and rendered its sentence fully informed by it. **See Devers**, 546 A.2d at 18; **Fullin**, 892 A.2d at 849–50. Thus, the trial court considered Appellant's character – including his youth, his prior criminal history, and good behavior while incarcerated; his rehabilitative needs, including his earlier actions while on house arrest and his failure to reform while on juvenile probation; and the impact of his actions on his victims and on the community and public, including his lack of violent behavior. **See** 42 Pa.C.S. § 9721(b); **Schutzues**, 54 A.3d at 99. The trial court also had reviewed the sentencing guidelines, which take into account the gravity of the offenses. N.T., 1/9/13, at 3; **see** 42 Pa.C.S. § 9721(b). Accordingly, the trial court properly reviewed all of the requisite factors required by the Sentencing Code. Having done so, we conclude that the trial court did not abuse its discretion in imposing the sentence that it selected.

The record does not support the conclusion that "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of

- 10 -

partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Zirkle*, 107 A.3d at 132. Appellant argues that "[t]he trial court did not take the re-sentencing hearing seriously in the slightest, stating during the call of the list, 'So you're here for me to say [that] I [can] impose the same sentence, but I'm not doing it on the basis of a mandatory minimum?'" Appellant's Brief at 14 (quoting N.T., 11/6/15, at 4). We acknowledge that the trial court's comment was flippant, but that does not make the sentence improper so long as the trial court considered all of the appropriate factors and applied them in a correct way to reach an appropriate sentence. As we have held, the trial court properly considered Appellant's character, his rehabilitative needs, the gravity of his offenses, and the impact of his actions on his victims and on the community and public. We therefore discern no basis upon which to conclude that the trial court did not take the re-sentencing hearing seriously.

Judgment of sentence affirmed.

Judge Panella joins the memorandum.

Judge Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2017

- 11 -