J-S37012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM JOSEPH SNYDER | |
| Appellant | No. 1933 MDA 2016 |

Appeal from the Judgment of Sentence imposed October 7, 2016
In the Court of Common Pleas of Clinton County
Criminal Division at No: CP-18-CR-0000275-2015

BEFORE: STABILE, MOULTON, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                          **FILED JULY 27, 2017**

Appellant, William Joseph Snyder, appeals from the judgment of sentence imposed on October 7, 2016, in the Court of Common Pleas of Clinton County after entering a plea of guilty to the third-degree murder of his wife and abuse of her corpse, as well as two counts of tampering with or fabricating physical evidence and one count of unsworn falsification to authorities.[1] Appellant contends his aggregate sentence, while within the standard range and consistent with his plea agreement, was excessive and failed to consider his rehabilitative needs. Following review, we affirm.

The affidavit of probable cause in this case reflects that Appellant strangled his wife Kelley Jo at their Renovo, Pennsylvania home on Easter

---

[1] 18 Pa.C.S.A. §§ 2502(c), 5510, 4910(2), and 4904(b).

Sunday afternoon, April 5, 2015, while their children were in the home. He placed her body in a sleeping bag in the basement of the home and then drove the body to nearby Halls Run, dragging it down over an embankment so that her feet were touching the water at Halls Run. Appellant then proceeded to a nearby restaurant where he left the sleeping bag in the restaurant's dumpster. Affidavit of Probable Cause, 5/15/15, at 2.

The following day, Appellant contacted the Pennsylvania State Police to report his wife missing. On April 9, he reported that he had received a ransom note requesting payment of $60,000. On April 10, he showed his pastor an email on his cell phone directing him to procced to a local restaurant immediately or Kelley Jo would be killed. He told the pastor he intended to go to the restaurant, but instead fled the area. He was subsequently detained in Horseheads, New York. Upon his return to Renovo, Appellant admitted sending the email and fabricating the ransom note. He then admitted to taking his wife's body to a remote location outside South Renovo and leaving her body there before reporting her missing to law enforcement, knowing she was dead. *Id.* at 1.

At Appellant's guilty plea hearing on December 30, 2015, the Commonwealth explained the terms of Appellant's negotiated plea. Appellant would plead guilty to third degree murder with a prior record score of zero and an offense gravity score of 14. The standard range would be 72 months to the statutory limit of 20 years, with a 40-year maximum. The

Commonwealth noted its agreement to the standard range sentence and acknowledged the trial court would determine where within the range the sentence would be appropriate. Notes of Testimony ("N.T."), Guilty Plea Hearing, 12/30/15, at 5-6.

Appellant would also enter a guilty plea to the remaining charges: abuse of corpse, a second-degree misdemeanor with an offense gravity score of 3 and a standard range of restorative sanctions ("RS") to one month; two counts of tampering with and fabricating evidence, misdemeanors of the second degree with an offense gravity score of 2 and a standard range of RS; and one count of unsworn falsification, a misdemeanor of the third degree with an offense gravity score of 2 and a standard range of RS. The agreement on each of those charges was to a standard range sentence. There was no agreement as to whether the sentences would be consecutive or concurrent. *Id.* at 6-7.

The trial court then addressed Appellant, summarizing the terms of the plea agreement as to each charge and the potential maximum sentence Appellant could face. *Id.* at 9-19. Appellant acknowledged that the trial court summarized the plea agreement as Appellant understood it. *Id.* at 19. Appellant then entered his guilty pleas to all five counts and the trial court found that the pleas were entered knowingly, intelligently, and voluntarily.

*Id.* at 20-22. The trial court ordered a pre-sentence investigation and the scheduling of the sentencing hearing. *Id.* at 27.[2]

At Appellant's October 7, 2016 sentencing hearing, statements were presented by Kelley Jo's relatives and by Appellant's relatives. Appellant also addressed the trial court on his own behalf, explaining that he suffered from psychological problems, including post-traumatic stress syndrome ("PTSD"), stemming from his military service as part of a communications team in Iraq. He explained that an argument with Kelley Jo escalated on the day she died, causing him to lose perspective of what was happening and to panic. He did not want his kids to see what happened so he covered it up. He regretted not calling 9-1-1 immediately. Notes of Testimony, Sentencing, 10/7/16, at 35-42.

The trial court sentenced Appellant to a minimum of 240 months and maximum of 480 months at SCI Camp Hill for third-degree murder. For abuse of corpse, the trial court imposed a sentence of imprisonment of one month to 24 months at SCI Camp Hill, consecutive to the sentence for murder. *Id.* at 53-54. On the remaining charges, the trial court imposed a

_____

[2] During a sidebar, the prosecutor noted on the record that "part of the initial plea negotiation at the preliminary hearing included the fact that if [Appellant] did not enter a guilty plea to the charges [at the guilty plea hearing] and elected to go to trial, that the Commonwealth would be able to amend the information to include [a] murder in the first degree count without necessity of going back to further preliminary hearing." N.T., Guilty Plea Hearing, 12/30/15, at 26. Counsel for Appellant acknowledged that agreement. *Id.*

sentence of 24 months' probation for each charge of tampering with or fabricating evidence and 12 months' probation for unsworn falsification to authorities. Each sentence of probation would run concurrently with the remaining sentences. *Id.* at 54-55. The trial court explained its intention that the aggregate sentence would be 241 months to 504 months in prison, with credit for time served. *Id.* at 56.

Appellant filed a timely motion to reconsider or modify his sentence. The trial court denied the motion following an October 31 hearing. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider one issue in this appeal:

1. Did the trial court abuse its discretion when it imposed consecutive incarceration terms at the top end of the standard range for each of the counts that entailed incarceration?

Appellant's Brief at 4. As such, Appellant presents a challenge to the discretionary aspects of sentence.

In *Commonwealth v. Griffin*, 65 A.3d 932 (Pa. Super. 2013), this Court reiterated:

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly

> preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006).

**Id.** at 935 (quoting **Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely appeal; he properly preserved the issue in his motion to reconsider/modify his sentence; and there is no fatal defect in his brief, which includes the statement required by Pa.R.A.P. 2119(f). Therefore, we must determine whether Appellant has presented a substantial question that his sentence is not appropriate under the Sentencing Code.

In **Commonwealth v. Caldwell**, 117 A.3d 763 (Pa. Super. 2015) (*en banc*), this Court explained:

> "When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines." **Commonwealth v. Fullin**, 892 A.2d 843, 847–48 (Pa. Super. 2006) (internal citations omitted).
>
> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. **Commonwealth v. Mastromarino**, 2010 PA Super 128, 2 A.3d 581, 587 (Pa. Super. 2010), *appeal denied*, 609 Pa. 685, 14 A.3d 825 (Pa. 2011). Rather, the imposition of consecutive rather than concurrent sentences will

present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Lamonda*, 2012 PA Super 180, 52 A.3d 365, 372 (Pa. Super. 2012), *appeal denied*, 621 Pa. 677, 75 A.3d 1281 (Pa. 2013).

> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

> *Commonwealth v. Dodge*, 2013 PA Super 253, 77 A.3d 1263, 1270 (Pa. Super. 2013), *reargument denied* (Nov. 21, 2013), *appeal denied*, 625 Pa. 648, 91 A.3d 161 (Pa. 2014) (emphasis in original).

*Id.* at 768-69 (alteration in original).

In *Caldwell*, this Court recognized that a claim the sentencing court failed to consider an appellant's rehabilitative needs failed to raise a substantial question and that a claim of excessive sentence does not present a substantial question when the sentence falls within the sentencing guidelines. *Id.* at 770 (citations omitted). At first blush, it would seem that *Caldwell* demands that we find Appellant's claim of excessiveness fails to raise a substantial question. However, the *en banc* panel in *Caldwell* also recognized that an appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a

substantial question." *Id.* (citing *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014), *appeal denied*, 105 A.3d 736 (Pa. 2014)).

Here, Appellant argues the trial court "ignored the numerous mitigating factors and evidence presented by [Appellant] at sentencing." Appellant's Brief at 11. He argues that he delivered a "sincere apology to the victim's family and the community as a whole" at sentencing and "expressed extreme remorse[.]" *Id.* at 12-13. He also asserts that he had no prior criminal history, never experienced the rage leading to his crimes before he suffered PTSD stemming from combat service, and had sought treatment for PTSD since his return. *Id.* at 13. Appellant further claimed that he had accepted the gravity and effect of his actions and expressed extreme remorse as to the effects of his actions on his victims, recognizing his sentence would leave his children without either parent for the remainder of their childhood. *Id.* at 14. "This acceptance of responsibility together with having lived a productive life bereft of any other criminal conduct indicates that [] Appellant has the ability to be rehabilitated and to return to society. The sentence imposed, and the basis for it, ignore[s] the rehabilitative potential of [] Appellant." *Id.*

Appellant acknowledged that the sentence imposed fell within the standard range and the terms of the plea agreement. However, he contends the sentence constituted an abuse of discretion "because this sentence left no room for consideration of any of the mitigating factors and evidence

presented at sentencing, most, if not all of which was uncontested." *Id.* at 14-15. In light of this Court's holding in *Caldwell*, we find Appellant has asserted a substantial question, asserting an excessive sentence claim in conjunction with a claim that the trial court failed to consider mitigating factors. Therefore, we grant Appellant's petition for allowance of appeal and shall address the merits of his claim.

As this Court reiterated in *Caldwell*:

When reviewing a challenge to the discretionary aspects of sentencing, we determine whether the trial court has abused its discretion. [*Commonwealth v. Seagraves*, 103 A.3d 839, 842 (Pa. Super. 2014)]. We observe:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Raven, supra* at 1253 (quoting *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006)).

*Caldwell*, 117 A.3d at 770.

Here, as in *Caldwell*, Appellant exercised his right to allocution at his sentencing hearing, before the court sentenced him. He talked about his background and his educational and professional successes prior to his service in Iraq. He explained how his experiences in Iraq led to his PTSD and struggles upon his return. He explained that his first wife took their son

and left him a few months after he returned home. He then told of meeting Kelley Jo, ultimately marrying her, and explained that they had a daughter together and that he adopted her son from a previous relationship. N.T., Sentencing, 10/7/16, at 35-42.

Appellant explained the circumstances of the argument that escalated into Kelley Jo's death. He talked of panicking when he realized what had happened, his regrets for not calling for help, and the relief he felt after telling the state police what really happened. He apologized to Kelley Jo's family, the community and the police, noting and accepting that there was a price for him to pay but hoping he would be given a chance to be a part of his children's lives. *Id.* at 42-44.

The trial court then acknowledged Appellant's guilty pleas and explained that the court had considered certain factors—including retribution, rehabilitation, deterrence and incapacitation—in fashioning a sentence in accordance with sentencing guidelines. *Id.* at 45-46. The court then summarized Appellant's background, including his military service and military awards. Before imposing the sentences, the trial court explained, in part:

> Mr. Snyder, what I'm doing is I'm looking at who you are and what you were thinking, and applying that to the facts of this case. In looking at this case, this is what I see. You and your deceased wife got into a verbal argument which escalated to a physical altercation. Because you were bigger and stronger, you straddled her, you put your hands around her neck, and you choked her to death. After causing her death you took her body to the basement of your residence, put her in a sleeping bag,

and eventually transported her body to an embankment in the Halls Run area. This all occurred on April 5, of 2015.

You then put together a story telling everyone your wife had left the residence and was picked up by somebody who wanted a ransom. You then told a version that she overdosed on hydrocodone and anxiety pills. It took until April 11 until you finally admitted to strangling her to death with your bare hands. During these seven days, you tortured her family and you tortured the community. The [c]ourt rejects any argument that your actions should be excused or mitigated as a result of your military service. You were aware of your symptoms, you were provided with treatment through a combination of psychotherapy, antidepressants, and antianxiety medication. The tools were there for you to use. You refused to accept these tools. You chose to ignore them or to reject them. The sad thing is that treatment was available and because of your own weaknesses you refused treatment. You argue to this [c]ourt that at the time of this incident that you were suffering from post traumatic stress syndrome. The psychological evaluation that your counsel provided to the [c]ourt supports that diagnosis. [The psychologist who completed the psychological evaluation] opines that it is common for a person diagnosed with PTSD to experience feelings of anger when they become stressed out, leading to dissociation and mental confusion. [The psychologist] further opines that in your case your PTSD caused you to become enraged, resulting in you killing your wife by choking her to death.

Quite honestly, I have trouble accepting that theory. I listened to you today, Mr. Snyder. You gave a detailed version of these events. You told the probation officer that you blacked out, but listening to you today I find that hard to believe. You told a story today almost second by second of what occurred once the argument was initiated. If you truly lost your senses and lost perspective of what was happening, this [c]ourt would have expected a different reaction from you when you regained your senses and your perspective of what you did. Instead of immediately notifying someone – and as you had indicated you didn't call 9-1-1 – you hid the body and pursued your ruse on the family, the authorities, and the public for approximately a week. You created a kidnapping and ransom scenario to mislead and divert attention from yourself.

- 11 -

This is not the behavior that this [c]ourt would expect from someone who blacked out, lost their senses and perspective. These actions were designed to hide the offense, mislead, and misdirect the family, the authorities, and the public. The actions that we heard today that occurred following the death of your wife clearly indicate to this [c]ourt that you had no remorse for killing her. Had you immediately called for help after the incident and attempted in any way to save Kelley's life, this [c]ourt may have looked at your situation differently. You choked the life out of your wife with your bare hands as you straddled her. You watched her die. You did nothing to save her.

After you took your wife's life, you then continued your criminal behavior by hiding the body and fabricating story after story regarding her disappearance. We are here today because you could not control your temper. It's as simple as that. Because of your anger and your inability to control your temper, children no longer have a mother, parents no longer have a daughter, siblings no longer have a sister, and a community after a week of pure suffering and torture because of your lies, no longer ha[s] a friend.

For the reasons discussed, the [c]ourt makes the finding that a sentence of probation or partial confinement is not appropriate. The [c]ourt determines that total confinement is necessary under the circumstances discussed. Any lesser sentence depreciates the seriousness of your actions. The [c]ourt believes that you are in need of an extended period of incarceration as an object lesson and to undergo extensive rehabilitation regarding your propensity toward violence. The [c]ourt will honor the agreement of the Commonwealth and [Appellant] will enter the following sentencing [o]rder.

*Id.* at 49-52. The court then imposed the sentence set forth previously, including consecutive terms of imprisonment for third degree murder and abuse of corpse. The trial court did not offer a separate explanation for the decision to impose those sentences consecutively.

Appellant argues the trial court abused its discretion by imposing the maximum sentence possible under the terms of the plea agreement because "this sentence left no room for consideration of any other mitigating factors and evidence presented at sentence," resulting in a "manifestly excessive and unreasonable sentence." Appellant's Brief at 14-15. We cannot agree. It is clear the trial court specifically considered the "mitigating factors" Appellant believes commanded a lesser sentence. Clearly, also, the trial court considered Appellant's rehabilitative needs, commenting that the sentence imposed "was intended to give [Appellant] sufficient time to work on his anxiety and anger since he has demonstrated in the past that he was not willing to do so on his own." Trial Court Opinion, 12/22/16, at 5 (unnumbered). As required by 42 Pa.C.S.A. § 9721(b), the trial court considered the protection of the pubic, the gravity of the offenses in relation to the impact on victim and community, Appellant's rehabilitative needs, and the sentencing guidelines. *See* N.T., Sentencing, 10/7/16, at 45-52; *Fullin, supra*, 892 A.2d at 847-48. Appellant received a sentence in accordance with his plea agreement and within the standard range. Because the trial court did not ignore or misapply the law, exercise its judgment for reasons of partiality, prejudice, bias or ill will, or arrive at a manifestly unreasonable sentence, we find the court did not abuse its discretion in imposing Appellant's sentence.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/27/2017