J-S14034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES O. CARTER | : | |
| | : | |
| Appellant | : | No. 2002 EDA 2017 |

Appeal from the Judgment of Sentence February 17, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012077-2015,
MC-51-CR-0031150-2015

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY RANSOM, J.:                    **FILED APRIL 27, 2018**

Appellant, James O. Carter, appeals from the judgment of sentence of three to eight years of incarceration, imposed February 17, 2017, following a bench trial resulting in his conviction for possession of firearm prohibited, possession of instrument of crime with intent to employ it criminally, and simple assault.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case:

> On October 5, 2015, at approximately 4:15 P.M., Derek Hall ("Hall") and four or five other individuals were standing at 17th and Arch Streets in Philadelphia, discussing a football game. [Appellant], who was wearing a sombrero, began dancing in between them.  When Hall asked him to move, [Appellant]

---

[1] 18 Pa.C.S. §§ 6105(a)(1), 907(a), and 2701(a).

---

\*   Retired Senior Judge assigned to the Superior Court.

reached into his pants, pulled out a sawed-off shotgun, and pointed it at Hall. The small crowd scattered, and [Appellant] ran down 18th Street.

Police Officer Daniel Brooke responded to the area for a radio call for a person wearing a sombrero and carrying a sawed-off shotgun. Officer Brooke saw [Appellant] and a sombrero at the corner of 19th and Cuthbert Streets. From underneath a dumpster approximately ten feet from where [Appellant] was standing, Officer Brooke recovered a brown and black sawed-off shotgun. [Appellant] was placed under arrest.

The parties stipulated that [Appellant] was ineligible to possess a firearm. They also stipulated that the firearm was examined by the ballistics department, which determined that it was inoperable . . .

Trial Court Opinion (TCO), 8/28/17, at 1-2 (citations to the record omitted). According to the report of the ballistics department, the firearm had "heavy corrosion on all external mechanism[s]. Barrel plugged with brown dirt-like substance . . . Rifle was dismembered, cut open with portions broken off and removed to verify that chamber was not loaded. . . . No magazine or ammunition submitted." Notes of Testimony (N. T.), 12/12/16, at 25 (quoting Ex. C-3).

"After finding [Appellant] guilty of the above charges, the [trial] court deferred sentencing for a presentence investigation [('PSI')] and a mental health evaluation." TCO at 2. According to the PSI, Appellant had been honorably discharged from the United States Army, had some college education, and was homeless. PSI at 1-2.

During the sentencing hearing on February 17, 2017, Appellant's counsel stated that Appellant struggled with alcoholism, and the Commonwealth acknowledged Appellant's homelessness. N. T., 2/17/17, at

- 2 -

6, 9. During his allocution, *id.* at 11-13, Appellant stated that he is often attacked for being homeless and an "eyesore" and that he has sought treatment for his alcoholism. *Id.* at 12. He also asserted that he "was studying human services to help people and stuff like that. [He] was trying to be like a drug counselor, an alcohol and drug counselor." *Id.* at 13.

The trial court confirmed with Appellant's and the Commonwealth's counsel that Appellant's prior record score was "REFEL" – *i.e.*, a repeat felony offender – and that "the guidelines are 60 to 72 months plus or minus 12." *Id.* at 4, 13-14. Immediately prior to imposing sentence, the trial court stated:

> In fashioning a sentence, the [trial c]ourt has considered [Appellant's PSI], the protection of the public, the gravity of the offense as it relates to the impact on the community, and the rehabilitative needs of [Appellant]. The [trial c]ourt has considered [Appellant]'s allocution, and the fact that he waived his right to a jury, and the [trial c]ourt has considered the Commonwealth's sentencing memorandum.

*Id.* at 13-14. The trial court "sentenced [Appellant] to three to eight years of confinement for the [possession of] firearm [prohibited] violation and no further penalty on the remaining charges." TCO at 2.

"On February 28, 2017, [Appellant] sought leave to file a post-sentence motion *nunc pro tunc*, which the court granted." *Id.* The post-sentence motion challenged the weight of the evidence, requested a new trial, and challenged the discretionary aspects of Appellant's sentence. "[O]n June 16, 2017, the court denied the post-sentence motion. This [timely] appeal followed." *Id.* at 2. Appellant filed a court-ordered Pa.R.A.P

1925(b) statement of errors complained of on appeal, and the trial court issued a responsive opinion.

Appellant raises three issues for our review:

1.    Did the [trial] court err in finding that there was sufficient evidence to convict the [A]ppellant of Possession of a Firearm by a Prohibited Person 18 Pa.C.S. § 6105 where the item was not operable, heavily corroded, plugged with dirt, and had no magazine or ammunition, and, where the testimony of the witness was that at first sight he was unsure whether it was a real gun, and, when [Appellant] was holding it, and defending himself, he was wearing a sombrero and had been dancing with it in his belt as part of a Poncho Villa costume?

2.    Did the court err in finding that the weight of the evidence was enough to convict the [A]ppellant of Possession of a Firearm by a Prohibited Person 18 Pa.C.S. § 6105 where the item was not operable, heavily corroded, plugged with dirt, and had no magazine or ammunition, and, where the testimony of the witness was that at first sight he was unsure whether it was a real gun, and, when [Appellant] was holding it, and defending himself, he was wearing a sombrero and had been dancing with it in his belt as part of a Poncho Villa costume?

3.    Was the sentencing court's imposition of a 3-8 year state incarceration sentence unreasonable, manifestly excessive and an abuse of discretion where the court failed to conduct an individualized sentencing, did not properly consider the sentencing factors, ignored whether the sentence was the least stringent to protect the community, and was too high in light of mitigation presented?

Appellant's Brief at 8 (trial court's answers omitted).

**Sufficiency of the Evidence**

Appellant first contends that the evidence was insufficient to sustain his conviction for illegal possession of a firearm, because the firearm at issue was heavily corroded, plugged with dirt, and had no magazine or

ammunition and was therefore not operable. ***Id.*** at 13. Appellant further notes that, at first glance, Hall was not even sure if it was a firearm.

> In reviewing the sufficiency of the evidence, our standard of review is as follows:
>
> Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Fortson***, 165 A.3d 10, 14–15 (Pa. Super.) (citation and internal brackets omitted) (some formatting added), ***appeal denied***, 174 A.3d 558 (Pa. 2017).

In order to convict a person of violating Section 6105 of the Uniform Firearms Act, the Commonwealth must prove that the person possessed a firearm and has been convicted of an enumerated offense that prevents him from possessing firearms. 18 Pa.C.S. § 6105(a)(1), (b). Here, the parties stipulated that Appellant was ineligible to possess a firearm. TCO at 2.

Additionally, Appellant does not dispute that he was in possession of the gun. *See* Appellant's Brief at 13.

Appellant's sole challenge is whether the inoperable shotgun in his possession qualified as a "firearm" under Section 6105. According to that statute, "the term 'firearm' shall include any weapons **which are designed to** or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(f) (emphasis added). Under this definition, the weapon need not be able to expel a projectile at the time of its use provided that it had, at one point, been designed to do so. *See id.*; *Commonwealth v. Batty*, 169 A.3d 70, 77 (Pa. Super. 2017) ("we are not persuaded that operability is an essential element of [S]ection 6105" (quoting *Commonwealth v. Thomas*, 988 A.2d 669, 671 (Pa. Super. 2009)).

Accordingly, although the weapon in the current case was not operable for a plethora of reasons – heavy corrosion, plugged with a "brown dirt-like substance," no magazine or ammunition -- it still had been designed to expel a projectile by the action of an explosive. N. T., 12/12/16, at 25 (quoting Ex. C-3); *see* Appellant's Brief at 13; *Batty*, 169 A.3d at 77 (citing *Thomas*, 988 A.2d at 670-72). It was not a toy or a prop but merely a shotgun that had not been maintained – whether the victim could perceive this authenticity at first glance is irrelevant. *See* Appellant's Brief at 13. Consequently, the weapon at issue qualifies as a "firearm" pursuant to Section 6105, which was the only disputed element of the crime. The

Commonwealth hence has presented sufficient evidence to sustain Appellant's conviction under Section 6105(a)(1).

**Weight of the Evidence**

Next, Appellant challenges the weight of the evidence, arguing that the trial court's "failure to follow the spirit and purpose of the statute[, Section 6105,] should shock the conscious and cause the verdict to be overturned." Appellant's Brief at 15.[2]

Our standard of review of review for a challenge to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

---

[2] Appellant preserved his weight of the evidence claim through his post-sentence motion raising such a challenge and requesting a new trial. ***See*** Pa.R.Crim.P. 607.

*Commonwealth v. Talbert*, 129 A.3d 536, 545–46 (Pa. Super. 2015) (internal brackets, citations, and quotation marks omitted; some additional formatting applied).

Appellant has failed to articulate any argument as to why his conviction for illegal possession of a firearm was against the weight of the evidence, beyond the one sentence quoted above. Appellant's Brief at 15. Moreover, Appellant has not cited any case law that a trial court's "failure to follow the spirit and purpose" of a statute requires a finding that a conviction was against the weight of the evidence or that the defendant should receive a new trial. *Id.* Claims are deemed meritless where the assertions therein are not explained, developed, or supported by the record factually or legally. *Commonwealth v. Spotz*, 47 A.3d 63, 108 n.34 (Pa. 2012); *see also In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities." (internal citations and quotation marks omitted)); *see also Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining that an appellant's arguments must adhere to rules of appellate procedure, and "arguments which are not appropriately developed are waived"; arguments not appropriately developed include those where party has failed to cite any authority in support of contention). As Appellant fails to cite any applicable law in support of his contention, it does not merit relief.

To the extent that Appellant's challenge to the weight of the evidence overlaps with his challenge to the sufficiency of the evidence, his weight claim fails for the same reasons that his sufficiency claim failed. The trial court thus did not abuse its discretion in convicting Appellant of Section 6105(a)(1). *Talbert*, 129 A.3d at 545–46.

## Sentencing

Finally, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 15. Such a claim is not appealable as of right. ***Commonwealth v. Colon***, 102 A.3d 1033, 1042–43 (Pa. Super. 2014). Therefore, before we exercise jurisdiction to reach the merits of Appellant's issue, we must engage in a four-part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) whether the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code. *Id.* Only if the appeal satisfies each of these four requirements may we proceed to decide the substantive merits of the case. *Id.*

Instantly, Appellant timely filed a notice of appeal and properly preserved his issue in his post-sentence motion, and his brief contains a concise statement of the reasons on which he relies. Appellant's Brief at 6-7. In that concise statement of the reasons relied upon for allowance of

appeal, Appellant contends that his sentence is "contrary to the fundamental norms which underlie the sentencing process" and that the trial court "only focused on the severity of the crimes and the retribution of the complainants and did not consider the rehabilitative needs of appellant at all." *Id.* He adds: "The sentencing court here failed to carefully consider all relevant factors as set forth in § 9721(b) of the Sentencing Code[3] and imposed a sentence that was clearly unreasonable." *Id.* at 7 (some formatting added).

"We have found that a substantial question exists when the appellant advances a colorable argument that the sentencing judge's actions were . . . contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Radecki*, ___ A.3d ___, 2018 Pa. Super. 38, 2018 WL 989152, at *21 (filed Feb. 21, 2018). Additionally, "[a]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012) (citation and internal brackets omitted). Thus, we will consider the substantive merits of Appellant's sentencing claim.

_____

3 42 Pa.C.S. § 9721(b) states, in relevant part:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

A trial court has discretion when it sentences a defendant:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2015). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Schutzues*, 54 A.3d 86, 99 (Pa. Super. 2012); *accord Commonwealth v. Ritchey*, 779 A.2d 1183, 1187 (Pa. Super. 2001) (judge's statement of the reasons for imposing a particular sentence "must clearly show that he has given individualized consideration to the character of the defendant" (citation omitted).

In addition:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).  Thus, "[w]here the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors."  *Commonwealth v. Fullin*, 892 A.2d 843, 849–50 (Pa. Super. 2006).

Appellant now maintains that the trial court abused its discretion when it sentenced him to an aggregate sentence of three to eight years of incarceration for illegal possession of a firearm when the standard range of the sentencing guidelines was five to six years.  Appellant's Brief at 15.[4]  He insists that his sentence "was too high in light of mitigation presented," which included that Appellant enrolled in the United States Army, was honorably discharged, has sought treatment for his alcoholism, had completed some college education in order to pursue a career in addiction counseling.  *Id.* at 15-17; *see also* N. T., 2/17/17, at 6, 12-13; PSI at 1. Appellant also contends that "he has been attacked often for being homeless and being considered an 'eye sore.'"  Appellant's Brief at 17; *see also* N. T., 2/17/17, at 9, 12; PSI at 2.  However, he acknowledges that he is a repeat

---

[4] Appellant thus is only contesting his maximum sentence, as his minimum sentence was less than the standard range of the sentencing guidelines. Appellant's Brief at 5; N. T., 2/17/17, at 5.

felony offender. Appellant's Brief at 15; **see also** N. T., 2/17/17, at 4; PSI at 2.

In its remarks during the sentencing hearing, quoted above in their entirety, the trial court explicitly stated that it "considered" Appellant's PSI, his "rehabilitative needs," his "allocution, and the fact that he waived his right to a jury." N. T., 2/17/17, at 13-14; **see id.** at 11-13 (Appellant's allocution). Nevertheless, it also "considered . . . the protection of the public and the gravity of the offense as it relates to the impact on the community" and "the Commonwealth's sentencing memorandum." **Id.** at 13-14.

We conclude that, by considering the PSI and Appellant's allocution, the trial court created a proper record and rendered its sentence fully informed by it. **See Devers**, 546 A.2d at 18; **Fullin**, 892 A.2d at 849–50. Thus, the trial court considered Appellant's character – including his military service, honorable discharge, education, homelessness, and rehabilitative needs, as well as his prior criminal record and the impact of his actions on the community and public. N. T., 2/17/17, at 4, 6, 9, 12-14; PSI at 1-2; **see** 42 Pa.C.S. § 9721(b); **Schutzues**, 54 A.3d at 99. The trial court also reviewed the sentencing guidelines, which take into account the gravity of the offense. N. T., 2/17/17, at 5; **see** 42 Pa.C.S. § 9721(b). Accordingly, the trial court properly reviewed all of the factors required by the Sentencing Code. Having done so, we conclude that the trial court did not abuse its

discretion in imposing the sentence that it selected.  ***See Zirkle***, 107 A.3d at 132.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/18